THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com

*Firm email for docketing purposes:*
admin@the-plf.com

*Attorneys for Plaintiff Christina Chavez*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christina Chavez,<br><br>                    Plaintiff,<br><br>         v.<br><br>City of Phoenix, a municipal corporation,<br><br>Jeri Williams, Chief of Police of the City of Phoenix Police Department,<br><br>                    Defendants. | Case No.<br><br>**CIVIL RIGHTS COMPLAINT<br>(42 U.S.C. § 1983)**<br><br><br><br>(JURY TRIAL DEMANDED) |

For her Complaint against Defendants City of Phoenix and its Chief of Police, Jeri Williams, Plaintiff Christina Chavez, through undersigned counsel, hereby alleges as follows:

**PARTIES**

1.      Plaintiff Christina is an unmarried woman residing in Maricopa County, Arizona.

2.      Defendant City of Phoenix (the "City") is a municipal corporation created under the laws of the State of Arizona.  The City is under a duty to run its law enforcement activities in a lawful manner to preserve the peace and to preserve for its citizens the rights,

privileges, and immunities guaranteed and secured to them by the Constitutions and laws of the United States and the State of Arizona.

3. The City has established or delegated to its law enforcement agency the responsibility for establishing and implementing policies, practices, procedures and/or customs used by law enforcement officers employed by the City regarding the investigation, detention, arrest, and public relations during law enforcement operations.

4. Every act and omission of the employees, representatives, and agents of the Defendants detailed in this Complaint was performed under the color and pretense of the Constitutions, statutes, ordinances, regulations, customs, and uses of the United States of America, the State of Arizona, and the City of Phoenix, by their authority as sworn officers, and within the course and scope of their employment.

5. Defendant Jeri Williams is a resident of Maricopa County, Arizona who at all serves as the Chief of Police of the City of Phoenix. Upon information and belief she was acting in furtherance of her legal duties at all times relevant to this Complaint, and is named herein in her individual capacity.

6. Upon information and belief, there are currently unknown City of Phoenix employees who caused or contributed to Plaintiff's injuries. The identity and roles of these individuals are uniquely within the possession of the City of Phoenix and Plaintiff will amend this complaint to add such responsible individuals upon discovery of their identities.

7. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3)(4) and 1367(a). This Court has jurisdiction over Plaintiff's claims for violation of Plaintiff's civil rights under 42 U.S.C. § 1983.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions that give rise to this action occurred within this District and this Court otherwise has jurisdiction.

9. This case presents an actual case in controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution, and under the provisions of 42 U.S.C. §§ 1983 and 1988.

## JURISDICTION AND VENUE

10. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3)(4) and 1367(a). This Court has jurisdiction over Plaintiff's claims for violation of her civil rights under 42 U.S.C. § 1983.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions that give rise to this action occurred within this District within the appropriate statutes of limitations, and this Court otherwise has jurisdiction.

12. This case presents an actual case in controversy arising under the Fourth, and Fourteenth Amendments to the United States Constitution, and under the provisions of 42 U.S.C. §§ 1983 and 1988.

## GENERAL ALLEGATIONS

### Background of the Dion Johnson / George Floyd Protests

13. On the morning of May 25, 2020, with the country gripped in a global pandemic that was disproportionately impacting and killing black, indigenous, and people of color, a 28-year-old black father named Dion Johnson was asleep behind the wheel of his immobilized vehicle on the Loop 101. A DPS motor officer radioed in that Mr. Johnson was severely intoxicated and non-responsive. Minutes later, apparently without radioing for back-up, the Trooper shot and killed Mr. Johnson.

14. Before the community even had a chance to absorb the news, the earth shook: Social media began the viral circulation of a gruesome video depicting a white Minneapolis police officer kneeling on the neck of a handcuffed black father of two named George Floyd. During the 8 minutes and 46 seconds that the officer knelt on George Floyd's neck, he stared blankly at witnesses and ignored their pleas to stop while three other officers stood by and

provided protection to make sure that the crowd could not interfere with the ongoing murder of Mr. Floyd. In the following days, protestors took to the streets to demonstrate in Minneapolis and other American cities.

15. On Thursday, May 28, 2020, peaceful protestors gathered in downtown Phoenix. After several hours, Phoenix Police declared the protest "unlawful" and began shooting the protestors with tear gas and rubber bullets to disperse the crowd. Despite being subject to the deployment of chemical weapons banned for warfare by the Geneva Conventions,[1] no violence was threatened, no participants injured any police offices and all but eight (8) people voluntarily and peacefully left the area. Those eight people were arrested and charged with misdemeanor unlawful assembly.[2]

16. On Friday, May 29, 2020, protestors returned to downtown Phoenix. Again, the protests carried on peacefully for hours. This night there was some destruction to property, although no protest participants or police were injured. Nonetheless, Phoenix Police declared an unlawful assembly and again began shooting tear gas and rubber bullets in an attempt to disperse the protests.

17. On the morning of Saturday, May 30, 2020, Phoenix Mayor Kate Gallego and Police Chief Jeri Williams held a press conference at which they announced that the protests the night before were largely peaceful; that there was a "small" group of protestors who had caused damaged; and that the actions of a "few" had resulted in widespread property damage in the hundreds of thousands of dollars.[3] Phoenix PD made two arrests that night.[4]

18. That Saturday evening, protestors again returned to downtown Phoenix.

---

[1] https://www.usatoday.com/story/news/factcheck/2020/06/06/fact-check-its-true-tear-gas-chemical-weapon-banned-war/3156448001/

[2] https://www.abc15.com/news/national/rally-underway-in-phoenix-over-the-in-custody-death-of-george-floyd-in-minneapolis

[3] https://www.facebook.com/watch/?v=752671345475649

[4] https://www.abc15.com/news/region-phoenix-metro/central-phoenix/watch-rallies-continue-friday-night-in-phoenix-over-deaths-of-dion-johnson-and-george-floyd

History repeated itself for the third consecutive night: Largely peaceful protests were declared unlawful without cause, followed by mass deployments of tear gas. This night, however, Phoenix Police decided to change their tactics: Rather than permitting the protestors to disperse, they chased them down. Police rounded up and arrested 114 people; detained them for hours in vans and precincts; and eventually booked them into the county jail for the same exact charge (felony rioting). In support of each of these arrests, Phoenix Police "copied-and-pasted" the same generic probable cause statement – one that, in almost every case, was found to be constitutionally deficient by the Maricopa County Superior Court.

19.     The next morning, Sunday, May 31, 2020, Phoenix PD announced that it had arrested 114 people in downtown Phoenix for "rioting." Later that day, citing days of unrest in the City of Phoenix, Arizona Governor Doug Ducey issued an emergency order declaring a "State of Emergency" imposing a curfew beginning at 8 p.m. on May 31, 2020 on all residents, statewide. Significantly, the emergency order made no exception for exercise of First Amendment Rights.

### Phoenix PD's "Corral and Funnel" Tactic

20.     On the fourth night of protests, Phoenix PD engaged in another mass round-up of protesters—this time corralling and funneling them into a Phoenix community just east of 7th Street.

21.     Police did this by blocking 7th Street from both the North, South, and West—forcing attendees to funnel into the historic Garfield neighborhood where they then hunted a group teenagers for exercising their First Amendment rights.

22.     Plaintiff Christina Chavez is a resident of the Garfield neighborhood. She had participated in the protests earlier in the day, but had returned home before 8:00 p.m. when curfew went into effect.

23. After she returned home, she left to go to a restaurant and get something to eat—understanding that that was a valid reason for being out after curfew.

24. Upon returning home, she noticed a large number of police vehicles lining the streets of her neighborhood.

25. She slowed her vehicle down to a near-stop to try to see what was happening and to safely navigate the heavy police presence.

26. As her was inching towards her home, an officer stopped her and shone a light in her face before barking "go home."

27. Christina, upset at the state of her neighborhood, responded with a curt "shut up."

28. Then, out of nowhere, Christina heard the thud of bean bags pelting her car.

29. While she was trying to figure out what was happening, Christina heard what she believed to be a gunshot, followed the crash of glass as her rear window shattered.

30. Confused and afraid, Christina drove the short distance to her home and ran, terrified, from her car into her house.

31. Later, in assessing the damage, Christina discovered that Phoenix PD had fired bird shot at her vehicle. The bird shot had shattered her rear window and lay scattered across her backseat.

32. Phoenix PD had fired bean bag rounds at her car. One of those bean bags had also flown through her broken window. The others made their mark in dents along her car.

33. Significantly, Christina had not participated in the protests that evening after the curfew went into effect. She had not been violent or threatening with the officers. She was never arrested or charged with a crime or provided with a criminal citation for anything that night. She was simply driving home.

///

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Excessive Force in Violation of Fourth Amendment**
**to the United States Constitution**
**(Against Defendants Williams and Officers To be Named)**

34. Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

35. 42 U.S.C section 1983 provides, in relevant part, as follows:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

36. Plaintiff is a citizen of the United States.

37. Defendant Jeri Williams, and the unknown officers involved in the excessive use of force against Plaintiff, are "persons" as that term is defined by 42 U.S.C. § 1983.

38. Defendant Jeri Williams was, at all times relevant hereto, acting under the color of law in her capacity as the City of Phoenix Police Chief; her acts and omissions, as well as those of unnamed officers who directly caused Plaintiff's injuries (who will be named as soon as their identities become known) were conducted within the scope of their official duties or employment.

39. As the Chief of Police, Defendant Williams undoubtedly was aware of and authorized her officers' use of force at the fourth night of protests in her city.

40. At the time of the complained-of events, the Fourth Amendment to the United States Constitution clearly established Plaintiff's right to be secure in her person from unreasonable seizure through excessive force.

41. At the time of the complained-of events, any reasonable police officer would have known that the Constitution clearly establishes the right of American citizens to be secure in their persons from unreasonable seizure through excessive force.

42. Defendants' actions and use of force – including but not limited firing bird shot and bean bag rounds at Plaintiff, who had committed no crime and posed no threat to officers – were objectively unreasonable in light of the facts and circumstances confronting them and violated Plaintiff's rights.

43. Defendants' actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.

44. Defendants engaged in the above-described conduct willfully, maliciously, in bad faith, with willful indifference to and in reckless disregard of Plaintiff's federally protected constitutional rights, and with conscious awareness that they would cause Plaintiff to suffer physical, emotional, and psychological injuries.

45. Defendants' acts and/or omissions were moving forces behind Plaintiff's injuries, intentionally depriving her of her constitutional rights and causing her other damages.

46. Defendants are not entitled to qualified immunity for the conduct complained of in this Complaint.

47. As a proximate result of Defendants' unlawful and unconstitutional conduct, Plaintiff suffered injuries and other damages and losses as described herein entitling Plaintiff to compensatory, economic, consequential and special damages in an amount to be determine at trial.

48. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

49. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendants under 42 U.S.C. § 1983, in that the actions of these Defendants were taken maliciously, willfully, or with a reckless disregard of Plaintiff's constitutional rights.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Municipal Liability under *Monell***
**(Against City of Phoenix Only)**

50. Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

51. Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected by the Constitution.

52. Such municipal liability exists when a city fails to properly train, supervise, or discipline its employees, amounting to a deliberate indifference to a plaintiff's constitutional rights or when City or Department officials ratify unconstitutional conduct.

53. Upon information and belief, Chief Jeri Williams, the Chief of the City of Phoenix Police Department, authorized/ratified the use of force on residents of the Garfield neighborhood in Phoenix on the evening of May 31, 2020, whether or not those residents had participated in the protests.

54. Additionally, Phoenix PD has a long history of failing to discipline officers for excessive force: to the extent Phoenix PD fails to discipline its officers for the illegal arrest and excessive force used on Ms. Chavez, it will be liable under *Monell*.

55. These policies, patterns, practices, and/or customs of condoned misconduct are tacitly or overtly sanctioned by the City of Phoenix, as evidenced by the conduct of the defendants, the City's planning, and the City's anticipated approval of the Phoenix Police Department's $745 million budget today despite a national movement to reallocate police resources to other community uses in light of the epidemic of police misconduct.

56. The sum of this unconstitutional behavior has been carried out pursuant to policies, patterns, practices, and/or customs, whether formal or informal, which violate the constitutional rights of the Plaintiff and others in Plaintiff's situation.

57.     The condoning of the misconduct, and failure to end these policies, patterns, practices, or customs, was a direct and proximate cause of injuries suffered by Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court enter judgment against Defendants as follows:

   a. For compensatory damages (general and special) in an amount to compensate Plaintiff fully and fairly for the violations of her Constitutional Rights;

   b. For nominal damages as provided for by law;

   c. For punitive damages in an amount sufficient to punish defendants and deter them from similar unconstitutional and unlawful conduct in the future;

   d. For prejudgment interest on all liquidated sums;

   e. For attorneys' fees under 42 U.S.C. §§ 1983 and 1988;

   f. For Plaintiff's costs and other expenses incurred in this action; and

   g. Such other and further relief as the Court deems just.

DATED this 8th day of June, 2020.

                THE PEOPLE'S LAW FIRM, PLC
                645 North 4th Avenue, Suite A
                Phoenix, Arizona 85003

                By:/s/ Stephen D. Benedetto
                    Stephen D. Benedetto
                    Heather Hamel

                *Attorneys for Plaintiff Christina Chavez*